# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| B-3 PROPERTIES, LLC, | ) | |
| | ) | |
| Debtor/Appellant, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00128 |
| | ) | |
| DAVID B. LASCO and LASCO | ) | |
| FAMILY TRUST, | ) | CHAPTER 11 PROCEEDING |
| | ) | APPEAL OF CASE NO. 12-20432-jpk |
| Creditor/Appellee. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

When used properly, bankruptcy affords individuals and companies who are overwhelmed by debt a fresh start. When used improperly, however, the process can be used by debtors to improperly stall creditors from collecting their debts. Unfortunately, the latter case is before me today.

B-3 Properties, L.L.C., appeals the dismissal of its second bankruptcy attempt. In a nutshell, B-3 owns a single asset – a large piece of property in Hobart, Indiana – that it has been unable to sell during the pendency of each of its bankruptcies. David Lasco, a member of B-3 who is also one of its creditors, has foreclosed on the property and each time the property has been up for auction, B-3 has filed a last-minute bankruptcy to stay the sale. (The bankruptcies have been instituted on behalf of B-3 by one of its owners who evidently no longer sees eye-to-eye with his partner, Lasco.)

During this second bankruptcy, the bankruptcy court eventually ordered B-3 to submit both a valid purchase agreement and earnest money check by a date certain or face dismissal and a bar to refiling. Then things went from bad to worse with B-3 tendering multiple incomplete, invalid purchase offers and two bad earnest money checks in an attempt to stave off the sale of the property yet again. Because B-3 violated the bankruptcy court's order, it dismissed the bankruptcy and barred any refiling of it.

Since dismissal, the foreclosure action has moved ahead in state court. The state court receiver has accepted Lasco's bid to purchase the property and all that remains is for the sale to close. I stayed the sale, however, pending this appeal because if the sale went through, this appeal would be moot.

As alluded to above, what really seems to be driving this dispute is a conflict between two of B-3's members and Lasco. I don't know why B-3 wants so desperately to keep this property out of Lasco's hands, but I do know that this is an improper use of the bankruptcy process and it needs to stop. I will therefore **AFFIRM** the bankruptcy court's dismissal and bar to refiling.[1]

## Background

B-3 Properties, L.L.C., is an Indiana limited liability company owned by Robert Stiglich, Suheil Nammari, and David Lasco. Lasco is the Creditor/Appellee in this

---

[1] B-3 has requested oral argument on this issue, but I will deny this request as the briefing is more than adequate in assisting me to make my decision. In addition, I have already heard extensive oral argument on these issues during a hearing on B-3's previous motion to stay the sale of the property pending appeal [DE 16] and do not believe that hearing any further argument would be helpful.

action.  B-3's sole asset is a 200 acre plot of land in Hobart, Indiana.  On February 20,

2013, Stiglich filed a Chapter 11 bankruptcy on behalf of B-3, minutes before a

scheduled auction sale of the property.  (Rec. #1 at 6-14, 16-17.)[2]  This was B-3's second

bankruptcy; the first was voluntarily dismissed by B-3 after failing to pay any quarterly

fees and failing to file required monthly reports.  (*Id*. at 33, 200.)  That first bankruptcy

was also filed on the eve of a scheduled sale of the property.  (*Id*. at 6-14, 16-18.)

Lasco moved to dismiss the Chapter 11 case, alleging, among other

transgressions, bad faith by B-3.  (*Id*. at 18-19.)  Lasco also requested a bar to refiling.

(*Id*.)  At a hearing on the motion to dismiss, the bankruptcy court allowed B-3 another

chance to sell the property, ordering B-3 to submit a marketing plan by June 10, 2013.

(*Id*. at 131-32.)  Judge Klingeberger stated that the reason for requiring this marketing

plan was that there were concerns about having extensive proceedings in the

bankruptcy considering that it was a second bankruptcy for B-3, and that there had

already been "unsuccessful attempts to market/sell the property under the protection

of the automatic stay."  (*Id*.)  It is unclear whether B-3 complied with that order,

although the subsequent proceedings lead me to believe it did not.

---

[2]  The record in this matter is admittedly a bit confusing.  Any reference to the
docket in this Court, Case No. 2:14-cv-128, will be delineated as "DE __."  The record
filed by the Appellant was filed in three separate portions, which I will refer to as "Rec.
#1" (filed at DE 1), "Rec. #2"(filed at DE 1-1), and "Rec. #3"(filed at DE 1-2), herein.
Appellant further filed an addendum to its brief at DE 17-1, designating further
materials (some already in the record, some not), that I will refer to as "Addendum to
Appellant's Br."  Based on Appellant's opening brief, I permitted Appellee to
supplement the record, which I will refer to as "Supp. Rec." and is found at DE 31.

After a pretrial conference on June 26, 2013, the court further considered the motion to dismiss and afforded B-3 a final chance to sell the property, ordering B-3 to submit a motion to sell the property, including an offer to purchase that conformed to the Agreed Terms of Sale. (*Id.* at 170-71.) In the event that B-3 failed to comply, Judge Klingeberger made it clear that he would grant Lasco's motion to dismiss forthwith, "with a bar to refiling of any subsequent case under Title 11 . . . ." (*Id.*) The Agreed Terms of Sale required a non-refundable payment of $75,000.00 and a signed purchase agreement. (*Id.* at 173 ("There shall be a non-refundable earnest money deposit of Seventy-five Thousand Dollars ($75,000.00), which shall be paid immediately upon execution of Purchase Agreement by Buyer and Seller.").) This was all detailed in the bankruptcy court's Order of July 17, 2013 and the parties' Agreed Terms of Sale. (*Id.* at 170-71, 173.)

On September 28, 2013, B-3 submitted a motion to sell the property, attaching a purchase agreement and a copy of a $75,000.00 check representing the non-refundable deposit. (*Id.* at 176-77, 188.) There were a couple of major problems with the motion: the purchase agreement was not signed by the debtor and, more troubling, the check later bounced. (*Id.* at 186, 197, 216, 220.) This was the second time B-3 had submitted a bad check from a purported buyer. (*Id.*) And yet what is odd about this, according to Lasco, is that B-3 never pursued any fraud charges against the people who furnished the bad checks, which Lasco believes helps to demonstrate bad faith on the part of B-3. (DE 21 at 5; *see also* Rec. #1 at 216.) In other words, according to Lasco, there really

4

wasn't a bonafide purchaser of the property and instead Lasco's partners were just jerking him around to stave off his efforts to foreclose on the property. In any event, after the check bounced, the would-be purchaser withdrew the offer to purchase. (Rec. # 1 at 220.)

On November 7, 2013, B-3 tried yet again; on that date it submitted yet another offer to purchase the property. The problem was that this offer came more than a month after the bankruptcy court's deadline, and, in any event, the purchase offer was otherwise fraught with problems: the offer was not signed, nor was any earnest money provided. (*Id*. at 203-206.) Not surprisingly, Lasco again moved for dismissal asking the bankruptcy court to grant its original Motion to Dismiss, as the court said it would do if B-3 failed to comply with its Order of July 17, 2013. (*Id*. at 214-17.)[3]

The bankruptcy court set the matter for a final hearing on Lasco's motion to dismiss and an extensive hearing was held on December 19, 2013. (Rec. #2 at 10-11; Addendum to Appellant's Br. at 10, 20.) The court dismissed the action on the record, following that up with a docket entry stating "Case Dismissed by separate order." (Rec #1 at 5.) B-3 then filed on January 2, 2014 an Emergency Motion to Reconsider Dismissal, challenging the oral December 19, 2013 dismissal. (Rec. #2 at 11.) The

---

[3] In the meantime, it seems that B-3 continued to flout the bankruptcy rules by failing to submit its Monthly Operating Reports and by failing to pay the required quarterly fees (Rec. # 1 at 200-201), all of which helps to show that the only thing B-3 was interested in was stalling the foreclosure.

bankruptcy court both denied that motion and issued its written order of dismissal on

January 9, 2014. (*Id*. at 11-12.) The dismissal stated:

> B-3 Properties, LLC, and any party having an interest in that entity, or otherwise
> with respect to real property which comprised property of the bankruptcy estate
> in Case No. 13-20432, is permanently enjoined from filing any case under Title 11
> of the United States Code which includes as property of the bankruptcy estate of
> any such person or entity any real estate comprising property of the bankruptcy
> estate in Case No. 13-20432.

(Rec. #2 at 149.) B-3 then filed a second motion for reconsideration on January 23, 2014,

challenging the January 9, 2014 dismissal order and that motion was denied on

February 7, 2014. (*Id*. at 12.) B-3 filed its Notice of Appeal on February 21, 2014. (*Id*.)

B-3 initially appealed both the bankruptcy court's dismissal and bar to refiling,

and its denial of B-3's request for a stay. Before its appeal of the denial of its request for

stay was docketed, B-3 filed in this Court an emergency motion requesting a stay of the

state court sale. (DE 6.) After the parties fully briefed the issue and I heard oral

argument (DE 16), I granted the stay (DE 18), mooting the appeal of the stay order. The

only issue before me, then, is B-3's appeal of the dismissal and permanent bar to

refiling. In addition, Lasco challenges my jurisdiction over this appeal, claiming that

B-3 has filed the appeal too late.

## Discussion

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the

district court functions as an appellate court and is authorized to affirm, reverse,

modify, or remand the bankruptcy court's ruling. Fed. R. Bankr. P. 8013. The standard

for review of bankruptcy court decisions depends upon the issue being reviewed. Findings of fact are upheld unless clearly erroneous, but legal conclusions are reviewed *de novo*. *Id*.; *In re Marrs-Winn*, 103 F.3d 584, 589 (7th Cir. 1996). Dismissals of bankruptcy petitions are reviewed for an abuse of discretion. *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002).

In reviewing for abuse of discretion, I have to reverse where a bankruptcy court's "decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); s*ee also Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004). Whether I agree with the bankruptcy judge's decision is beside the point as long as the decision is within the range of options from which one would expect a reasonable trial judge to select. *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002). It is for this reason that B-3 faces an uphill challenge in trying to convince me that Judge Klingeberger abused his discretion. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002).

As noted above, B-3 takes issue with the bankruptcy court's dismissal order and Lasco argues that I don't even have jurisdiction to hear this appeal. I will first address Lasco's jurisdictional arguments. I will then turn to whether Judge Klingeberger abused his discretion in dismissing B-3's bankruptcy petition with a permanent bar to refiling.

**Jurisdiction**

Lasco claims B-3's appeal is not properly before me because it was filed too late. Under Bankruptcy Rule 8002, an appellant must file its notice of appeal within 14 days of the judgment appealed. B-3 filed its Notice of Appeal on February 21, 2014. Lasco argues that B-3's 14-day time clock began to run on January 9, 2014 — the date on which Judge Klingeberger issued his denial of B-3's motion for reconsideration and also issued his written order dismissing the case. (DE 21 at 1.) That would mean that over 40 days elapsed before B-3 filed its Notice of Appeal.

B-3, however, argues that the clock didn't start until February 7, 2014 — the date on which Judge Klingeberger issued his denial of B-3's second motion for reconsideration, because the first motion for reconsideration essentially jumped the gun by challenging only a non-final oral order and was therefore inoperative. (DE 22 at 1-2.) According to B-3, the clock didn't start until it properly moved to reconsider the bankruptcy court's final written order, issued on January 9, 2014. (*Id.* at 3.) I agree with B-3 on the jurisdictional argument.

In general, filing a motion for reconsideration tolls the time limit for filing an appeal until after full resolution of that motion. *Martinez v. City of Chicago*, 499 F.3d 721, 725 (7th Cir. 2007). While a premature motion for reconsideration (*e.g.* one filed after an oral ruling, but before the Rule 58 written judgment has issued) tolls the timing deadline, this happens only if the motion challenges a *final* ruling. *See Borrero v. City of Chicago*, 456 F.3d 698, 699 (7th Cir. 2006) (stating that a motion for reconsideration tolls

the statute of limitations if "the motion is filed *before* the Rule 58 judgment order has been docketed or even before there *is* a Rule 58 judgment, *provided that a final judgment has been rendered*.") (some emphasis original, some added); *Martinez*, 499 F.3d at 725 ("The key is whether the [motion for reconsideration] followed a *final judgment*, not how the finality of the judgment is demonstrated.")(emphasis added).

There is no doubt that Judge Klingeberger's oral order on December 19, 2013 was not a final judgment. Not only did he follow up the hearing with a docket entry stating that the case would be "[d]ismissed by separate order" (Rec. #1 at 5), but he also explicitly stated as much in his January 9, 2014 order denying B-3's first motion for reconsideration: "Whatever may have been determined on a [*sic*] record at the December 19, 2013 hearing was not an actionable final order of the United States Bankruptcy Court for the Northern District of Indiana." (Supp. Rec. at 33.) Since Judge Klingeberger was in the best position to interpret his own ruling, it is clear that his ruling was not final. *In re Chicago, Rock Island, & Pac. R.R.* Co., 860 F.2d 267, 272 (7th Cir. 1988) (finding bankrupcty court was "in the best position to interpret its own orders"); *accord Hastert v. Illinois St. Bd. of Elect. Comm'rs.*, 28 F.3d 1430, 1438 (7th Cir. 1993).

Judge Klingeberger's dismissal therefore did not become final until his January 9, 2014 order, and B-3's time clock began to run after February 7, 2014 – when its January 23, 2014 renewed motion to reconsider was denied. Thus, because B-3 thereafter timely filed its appeal, this appeal properly before me.

**Evidentiary Hearing on Motion to Dismiss**

B-3 argues that I should reverse the dismissal of its bankruptcy petition because the bankruptcy court "failed to follow its own prior order as to a possible hearing of dismissal." (DE 17 at 13.) In that prior order — the Record No. 66 Order — Judge Klingeberger stated that "[i]f a motion and an offer to purchase subject to that motion *which conform to the foregoing requirements of this order* are timely filed by debtor and the motion for sale is not approved . . . then the court will conduct a hearing as to further proceedings on the record No. 10 motion." (Rec. #1 at 171 (emphasis added).) Recall that the Record No. 10 Motion that Judge Klingeberger was referring to was B-3's original motion to dismiss. If B-3 failed to conform to the terms of the order, however, then B-3's petition would "forthwith be dismissed on the record No. 10 motion with a bar to refiling of any subsequent case under Title 11 . . . ." (*Id*.) So in essence, if B-3 complied with the order and for some reason the sale did not go through, then the court would hear further argument as to why the petition should not be dismissed. If B-3 instead failed to comply with the order, then its action would be immediately dismissed with no further hearing.

In dismissing the action, the bankruptcy court found that B-3 had *not* complied with the requirements of its Record No. 66 Order because it had not presented a valid purchase offer. (Rec. #2 at 148-49.) Therefore, under the procedures set forth in its order, an evidentiary hearing was not contemplated. In any event, B-3 wasn't entitled to a hearing anyway. *See In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009) *(finding*

bankruptcy courts are not required to hold a hearing on a motion to dismiss where "the court by virtue of having presided over the case is already familiar with those facts" because "neither the notice nor the hearing requirement is rigid" and parties are not entitled to "a particular type of hearing").

But Judge Klingeberger didn't do that — instead, he *did* hold an extensive hearing prior to dismissing B-3's action. On December 19, 2013, the court held a two-hour hearing during which the court heard opening and closing arguments from counsel for both B-3 and Lasco, and engaged in extensive questioning of both attorneys. And although B-3 claims that it did not receive the required 21-day notice of the hearing, the bankruptcy docket reveals that the court gave the parties 23 days' notice, which is more than sufficient. (Rec. #2 at 10.)

Given these facts, it is difficult to figure out why B-3 believes it did not obtain a hearing on its dismissal. Although not explicitly argued, B-3 seems to take issue with the fact that the notice and hearing referenced Lasco's Record No. 83 Motion to Dismiss instead of the Record No. 10 Motion to Dismiss. But this is of no consequence because, as discussed in the background section above, Lasco's Record No. 83 Motion to Dismiss merely requested that the court grant its Record No. 10 Motion to Dismiss as the court had previously said it would if B-3 failed to comply with the court's order regarding sale of the property.

Simply put, the bankruptcy court afforded B-3 more than ample opportunity to be heard on whether dismissal was proper. Far from "violating" its own order, the

court went above and beyond what it had contemplated by affording B-3 an additional opportunity to explain its continued inability to sell the property. There is no abuse of discretion here.

**Dismissal For Cause**

B-3 argues that there was no cause for dismissal because "[a] close review of paragraphs A through P [of Section 1112 of the Bankruptcy Code] show that none of these listed 'causes' apply to B-3 Properties L.L.C." (DE 17 at 19.) I disagree. Section 1112 of the Bankruptcy Code governs dismissal of bankruptcy actions and lists "failure to comply with an order of the court" at Paragraph E as one of a number of different actions constituting cause for dismissal. 11 U.S.C. § 1112(b)(4)(E). The bankruptcy court ordered B-3 to submit a motion to sell real property including an offer to purchase that conformed to the Agreed Terms of Sale. (Rec. #1 at 170-71.) In the event that B-3 failed to comply, its action would be dismissed forthwith with a permanent bar to refiling. (*Id*.) The Agreed Terms of Sale required a non-refundable payment of $75,000.00 and a signed purchase agreement. (*Id*. at 173.)

B-3 argues that the unsigned purchase agreement it submitted should suffice because there can't be a valid purchase agreement prior to court approval under 11 U.S.C. § 363. (DE 17 at 19.) But Section 363 doesn't say that and B-3 doesn't point me to any specific part of Section 363 or any case law to support its interpretation. Even if that were the case, however, the bankruptcy court's order also required a valid earnest money deposit, which B-3 failed to provide since the check it submitted bounced. (Rec.

#1 at 220.)  For that reason alone, B-3 violated the bankruptcy court's order, warranting

immediate dismissal.  The bankruptcy court therefore did not abuse its discretion in

dismissing this action for failing to comply with its order.

**Permanent Bar to Refiling**

The more difficult question is whether the bankruptcy court abused its discretion

by further imposing a permanent bar to refiling.  In dismissing B-3's action, the

bankruptcy court stated:

> B-3 Properties, LLC, and any party having an interest in that entity, or otherwise
> with respect to real property which comprised property of the bankruptcy estate
> in Case No. 13-20432, is permanently enjoined from filing any case under Title 11
> of the United States Code which includes as property of the bankruptcy estate of
> any such person or entity any real estate comprising property of the bankruptcy
> estate in Case No. 13-20432.

(Rec. #2 at 149.)  B-3 argues that such a bar violates Sections 109(g) and 349(a) of the

Bankruptcy Code.

There is some tension between those two sections of the code.  Section 109(g)

states in relevant part:

> Notwithstanding any other provision of this section, no individual . . . may be
> a debtor under this title who has been a debtor in a case pending under this title at
> any time in the preceding 180 days if –
> (1) the case was dismissed by the court for willful failure of the debtor to abide
> by orders of the court . . . .

11 U.S.C. § 109(g).    By contrast, Section 349(a) states:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this
> title does not bar the discharge, in a later case under this title, of debts that were

dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).

According to B-3, any bar beyond 180 days would violate 11 U.S.C. Section 109(g). In support, B-3 cites to *In re Frieouf*, a Tenth Circuit case where the court held that Section 349(a) was not intended to expand a bankruptcy court's power to bar refilings, and therefore Section 109(g) is the only means by which a court can deny a debtor's future access to bankruptcy. *In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir. 1991). Therefore, under *Frieouf*, courts are not permitted to bar filings beyond the 180 days set forth in Section 109(g). *Id.*

*In re Frieouf* has been widely criticized by nearly every other circuit addressing this issue, including two bankruptcy courts in this district, because it essentially reads out Section 349(a)'s statement of "unless the court, for cause, orders otherwise...." *See e.g In re Casse*, 198 F.3d 327, 336 (2nd Cir. 1999) (rejecting *Frieouf* and recognizing that "no other circuit has adopted its reading of the Bankruptcy Code"); *In re Dietrich*, No. 05-2255, 2007 WL 579547 at *4-5 (6th Cir. Feb. 15, 2007)(rejecting *Frieouf*'s interpretation of Sections 349(a) and 109(g) as the minority view); *In re Garcia*, 479 B.R. 488, 494 (N.D.Ind.Bkrtcy. 2012) (J. Klingeberger) ("The court first notes that it does not agree with the limitations imposed upon the use of 11 U.S.C. § 349(a) determined in *In re Frieouf . . . .*"); *cf. In re Earl*, 140 B.R. 728, 741 (N.D.Ind.Bkrtcy. 1992)("this Court disagrees

14

with the conclusions reached by the Court in *In re Frieouf*. . . that § 105 does not provide

the Bankrupcty Court with the equitable power to enjoin future filings.")(citation

omitted).

So the majority view is that Section 109(g) and Section 349(a) are entirely

reconcilable with one another. The former is specifically aimed at preventing serial

filers from bogging down the bankruptcy process; the latter is a more general provision

that allows bankruptcy judges to bar refiling when there is otherwise good cause for

doing it. *In re Casse*, 198 F.3d at 340-41. In other words, bankruptcy courts are

authorized to bar refilings beyond the 180 days set forth in Section 109(g) under either

Section 349(a), authorizing the court to bar refilings "for cause," or Section 105(a),

authorizing courts to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title . . . or prevent an abuse of process."

*See id.*

Though the Seventh Circuit has not explicitly addressed *In re Frieouf*, it follows

the majority view that courts may impose bars to refiling of longer than 180 days. *In re

Dempsey*, 247 Fed.Appx. 21, 2007 WL 2478674 at *25, **4 (7th Cir. 2007) (upholding one-

year bar to bankruptcy refiling). I therefore see no problem with the fact that the bar

imposed exceeds 180 days.

 B-3 further argues that the court could not order a bar of any duration because

there was "no motion filed or order entered alleging 'bad faith' by B-3 Properties

L.L.C." and "[t]here was no hearing or finding of 'bad faith.'" (DE 17 at 17.) The

Seventh Circuit, however, has ruled that Section 105(a) permits courts to issue refiling bars of greater than 180 days without finding bad faith: 11 U.S.C. § 105(a) "independently authorizes bankruptcy courts to prohibit bankruptcy refilings from debtors who are demonstrably ineligible to receive bankruptcy relief . . . . This includes cases where the debtor has not acted in bad faith." *In re Dempsey,* 247 Fed.Appx. at 25 (upholding one-year bar to refiling where debtor filed eight rejected plans and his "current financial situation necessarily prevents him from presenting a workable plan for the near term")(citations omitted). Certainly, given B-3's repeated unsuccessful attempts at selling its primary asset and two unsuccessful bankruptcy attempts, B-3 demonstrated that it is ineligible to receive bankruptcy relief. The bankruptcy court was therefore within its discretion to prohibit future filings without making explicit findings of bad faith.

Where the rubber really meets the road here is whether the bankruptcy court abused its discretion in issuing a *permanent* bar to refiling without making explicit findings of bad faith. In the case of a permanent bar, courts generally do require some kind of bad faith actions on the part of the debtor before forever barring them from refiling. For example, the Seventh Circuit has held that "dismissals with prejudice are therefore generally reserved for extreme situations, such as when a debtor conceals information from the court, violates injunctions, files unauthorized [bankruptcy] petitions, or acts in bad faith." *In re Hall*, 304 F.3d at 746.

Other circuits have upheld permanent bars where they have found some kind of bad faith behavior on the part of the debtor. *See e.g. In re Casse*, 198 F.3d at 342 (upholding permanent bar to refiling where debtor's bankruptcy filings repeatedly delayed creditor's foreclosure proceedings); *In re Leavitt*, 171 F.3d 1219, 1225-26 (9th Cir. 1999)(affirming permanent bar to refiling where debtor used the bankruptcy system to avoid paying a judgment); *In re Dietrich*, 2007 WL 579547 at *5 (upholding permanent refiling bar because "the plain language of section 349(a) appears to allow a bankruptcy court to dismiss a bankruptcy petition with prejudice, permanently, if there is sufficient cause" where debtor had filed three previous unsuccessful bankruptcy petitions and the filing of a fourth violated the court's order prohibiting future filings); *cf. In re Tomlin*, 105 F.3d 933, 938 (4th Cir. 1997) (finding "§ 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have res judicata effect"); *In re Johnson*, BAP No. EC-13-1094, 2014 WL 2808977 at *7 (9th Cir. June 6, 2014)("Upon a finding of bad faith, a bankruptcy court may dismiss a case with a permanent bar to refiling").

As these cases demonstrate, using the bankruptcy system to forestall a foreclosure and violating court orders are sufficient bases for permanently barring refiling. But did the bankruptcy court need to make explicit findings of bad faith for me to uphold the permanent bar? B-3 argues that I should reverse the bankruptcy court because:

[T]here was no motion filed or order entered alleging "bad faith" by B-3 Properties L.L.C. There was no hearing or finding of "bad faith." This is just an order "out of the blue" with no foundation in pleadings or facts. There was no motion by a creditor alleging bad faith.

(DE 17 at 17.)

This is a flat out misrepresentation of the proceedings below, and it is troubling. It is true that Judge Klingeberger did not make explicit findings of bad faith either on the record or in his order of dismissal. But contrary to B-3's assertion, Lasco filed not one but two motions alleging bad faith by B-3 and Judge Klingeberger heard extensive oral argument on these motions, all of which set forth in great detail B-3's continued attempts to forestall the state court foreclosure proceedings and repeated tendering of bad checks. (*See e.g.* Rec. #1 at 18 ("'Bad faith' is additional grounds for dismissal"); *Id.* at 216 (alleging two recent sale attempts involving NSF checks are "suspicious on their face").) To say there was "no motion filed" alleging bad faith or there was "no foundation in pleadings or facts" is simply untrue.

Although making specific findings of bad faith is certainly the more prudent practice, the fact that it did not happen here does not automatically render the bankruptcy court's decision to bar refiling an abuse of discretion because I "may affirm the judgment below on any ground supported by the record." *In re Disch*, 417 F.3d 769, 779 (7th Cir. 2005); *see also In re Leavitt*, 171 F.3d at 1223 (upholding permanent bar and finding "remand is not required when express findings are not made, if a complete

understanding of the issues may be had from the record without the aid of separate findings")(quotation marks and citations omitted).

Here, the record before the bankruptcy court paints a clear picture of B-3's bad faith:

- B-3 has filed two bankruptcies, both on the eve of a scheduled foreclosure/auction sale of B-3's sole asset. (Rec. #1 at 6-14, 16-18.) It ultimately voluntarily dismissed the first action after failing to pay any quarterly fees or file monthly operating reports. (*Id*. at 33, 200.)

- B-3 presented two separate bad checks from alleged potential buyers (*Id*. at 197, 216, 220), one of which occurred on the last day B-3 was permitted to file a motion for approval of sale under the terms of the bankruptcy court's Record No. 66 Order. (*Id*. at 176-188.)

- After withdrawing these non-compliant offers, B-3 submitted a new offer on November 7, 2013 – more than a month after the bankruptcy court's deadline – and again failed to provide any signed offer or earnest money. (*Id*. at 203-206.)

- B-3 blithely ignored the fact that it received bad checks from the would-be buyers and never pursed any fraud charges against them. (*Id*. at 216.)

Based on these events, it is clear that B-3 was using the bankruptcy process as a way of forestalling the inevitable foreclosure and sale of its property to Lasco. And most of this was in direct violation of the bankruptcy court's Record No. 66 Order. These facts and more were all before the bankruptcy court both in the form of extensive

briefing and oral argument, not to mention that Judge Klingeberger was no-doubt very familiar with these facts by virtue of having presided over the bankruptcy. Indeed, he cited the repeated bankruptcies and stalled sales as a reason for requiring B-3 to put forth an explicit marketing plan back in April 2013. (Rec. #1 at 132.) Based solely on the facts in the record before the bankruptcy court, I can find no abuse of discretion for permanently barring B-3 from any future bankruptcy filings.[4]

Although the record before Judge Klingeberger is entirely sufficient to support this ruling, I feel compelled to note that B-3's practice of promising to produce a bonafide buyer for the property only to have it fall apart has continued even in this Court. During prior briefing on the stay pending appeal that I granted in this matter (DE 18), B-3 assured me that a buyer was ready, willing, and able to proceed with the sale for $5 million. (DE 6 at 3.) Yet not one month later, B-3 changed its story yet again, submitting an alternate buyer because the prior proposed deal fell through. (DE 26 at 3.) I have no doubt that if I reinstated this bankruptcy, B-3 would continue to run through "potential buyers" in this fashion. A permanent bar to refiling will finally end B-3's abuse of the process.

_____

[4] B-3 also argues, with no development or citation to authority, that the permanent bar would impermissibly apply "to anyone who could later own such property either personally or as an entity." (DE 17 at 16.) I do not agree with B-3's interpretation. The bankruptcy court's order appears to be limited to individuals or entities who had an interest in the property at the time of the order, not those who may later acquire the property. And even if B-3's reading is right, it has no standing to challenge the harm that may come to future owners as it has no personal stake in that matter and would suffer no injury itself. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). That would be a matter for another day.

## Conclusion

For the reasons stated above, the judgment of the bankruptcy court is

**AFFIRMED**. All other pending motions are rendered **MOOT** by this ruling and the stay

granted by the Court on July 11, 2014 (DE 18) is **LIFTED**.

**SO ORDERED.**

ENTERED: September 19, 2014

 s/Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT